# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PERSIMMON RIDGE, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 17-CV-25-TCK -JFJ |
| | ) |
| RYAN ZINKE, in his official capacity as | ) |
| Secretary of the United States Department of | ) |
| Interior UNITED STATES BUREAU OF | ) |
| INDIAN AFFAIRS, an agency within the | ) |
| United States Department of Interior; and | ) |
| WELDON LOUDERMILK, in his official | ) |
| capacity as Director of the United States | ) |
| Bureau of Indian Affairs, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court are (1) the Motion to Dismiss Plaintiff's Amended Complaint for Lack of Subject Matter Jurisdiction (Doc. 21) and (2) the Motion to Dismiss for Failure to State a Claim (Doc. 22) filed by Defendants Ryan Zinke, in his official capacity as Secretary of the United States Department of Interior, the United States Bureau of Indian Affairs ("BIA"), and Weldon Loudermilk, in his official capacity as Director of the United States Bureau of Indian Affairs; and (3) the Second Motion to Amend Complaint (Doc. 35) and (4) the Motion for Leave to Conduct Discovery from Federal Respondents (Doc. 26) filed by Plaintiff, Persimmon Ridge, LLC ("Persimmon"). Based on the recent decision by the Tenth Circuit Court of Appeals in *Chance v. Zinke*, No. 17-5057 (Aug. 6, 2018), the Motion to Dismiss Plaintiff's Amended Complaint for

Lack of Subject Matter Jurisdiction (Doc. 21) is denied. However, the Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim (Doc. 22) is granted. The Second Motion to Amend Complaint (Doc. 35) and the Motion for Leave to Conduct Discovery from Federal Respondents (Doc. 26) are both denied.

**I. Background**

This case is one of four lawsuits Osage County landowners have filed in this District against the DOI, BIA, Osage Agency, and a number of oil and gas companies, alleging violations of the National Environmental Policy Act, 42 U.S.C. §4321 *et seq.* ("NEPA").[1]

Plaintiff owns real property in Osage County, Oklahoma. The subsurface mineral estate in Osage County is held in trust by the United States for the benefit of the Osage Nation pursuant to the Act of June 28, 1906, Pub. L. No. 59-321, § 3, 34 Stat. 539, 543-44, as amended ("1906 Act"). Pursuant to the 1906 Act, the Osage Nation, with the approval of the Secretary of the Interior, and under such rules and regulations as he may prescribe, is authorized to lease the Osage Mineral Estate for oil and gas exploration and development. The Secretary has delegated this authority to the Superintendent of the Osage Agency. *See* 25 C.F.R. § 226.4-5. All oil and/or gas leasing and related operations are governed by the regulations in 25 C.F.R. Part 226, and must be assessed for their environmental impact prior to approval by the Superintendent. 25 C.F.R. § 226.1(c). Upon receipt of an approved lease, lessees have the right to use so much of the surface of the land within the Osage Mineral Estate as may be reasonable for operations and marketing. 25 C.F.R. § 226.18. Before commencing drilling operations, a lessee must submit an APD, obtain approval from the Superintendent, and pay the surface owner a commencement fee. *Id.*, §§ 226.16(b) and 226.18(b).

---

[1] *See*, *i.e.*, *Donelson v. United States*, 14-CV-316-JHP-FHM; *Lenker v. Jewell*, 16-CV-532-CVE-JFJ; and *Chance v. Zinke*, 16-CV-549-JHP-PJC.

In its original Complaint filed January 17, 2017, Plaintiff challenged the Osage Agency's compliance with NEPA in its approval of two leases and 10 drilling permits allegedly affecting its property. (Doc. 2, ¶ 64).[2] On April 24, 2017, Defendants moved to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim. (Docs. 14-15).

On May 5, 2017, Plaintiff filed its First Amended Complaint. (Doc. 18). The First Amended Complaint includes changes in the legal description of real property owned by Plaintiff and substitutes language describing claims relating to specific leases and permits with a generic challenge to all of BIA's lease, lease assignment and drilling permit approvals since the inception of NEPA. *Id.*, ¶¶ 3, 14-15, 67. Plaintiff contends the agency failed to comply with the NEPA in its issuance of such approvals.

**II. Allegations of the Amended Complaint**

The First Amended Complaint alleges that Plaintiff owns real property located in Osage County, Oklahoma. (Doc. 18, ¶ 3). Pursuant to the Osage Allotment Act of 1906 (the "Act"), the United States, on behalf of the Osage Tribe, holds a subsurface mineral estate on behalf of the Osage Tribe. *Id.*, ¶ 17. The Osage Nation Mineral estate underlies approximately 1,475,000 surface acres of land in Osage County. *Id.*

Under the Act, the Secretary of the DOI is directed to manage oil and gas extraction leases, with the royalties earned from the leases reserved to the Osage tribe. *Id.*, ¶ 18. Pursuant to 25 CFR 226.2, 209 DM 8, 230 DM 1.3 IAM 4.1 and the Muskogee Area Addendum 9901 to 3 IAM 4 issued June 22, 1999, the Superintendent for the Osage Agency of the BIA is authorized, *inter*

---

[2] According to the original Complaint, the challenged approvals "include, but are not limited, to Lease No. 14-20-G06-21047, Lease No. 14-20-G06-21074 and drilling permits for Well Nos. 89-1, 2-17, 3-17, 4-17, 5-17, 1-20, 2-20, 1-18, 3-18 and 5-18." Complaint, Doc. 2, ¶64.

3

*alia*, to approve leases for oil and gas drilling within Osage County. *Id.*, ¶ 19. DOI regulations delegate the authority to manage the oil and gas activities to the Superintendent of the Osage Agency. *Id.,* ¶ 19. Under 25 CFR §226.2(c), "[*e*]*ach* oil and/or gas lease and activities and installations associated therewith subject to these regulations *shall* be assessed and evaluated for its environmental impact *prior* to its approval by the superintendent." *Id.* (emphasis in original). *Id.*, ¶ 20. Further, 25 CFR § 226.16 requires that the superintendent approve a drilling permit prior to commencement of any operations. *Id.*, ¶ 21 .

NEPA requires all federal agencies to assess the environmental impact of proposed "major federal actions" that significantly affect the quality of the environment. 42 U.S.C. § 4332(2)(C). *Id.*, ¶ 22. The approval of leases and permits for oil and gas related activities constitutes a "major federal action" that must be approved by the BIA in accordance with NEPA mandates. *Id.* NEPA and its regulations prohibit agencies from making any irreversible or irretrievable commitment of resources before their NEPA analysis and requires "all agencies of the Federal government" to prepare an Environmental Impact Statement ("EIS") before authorizing any "major federal action significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1501.4(a)(1). *Id.*, ¶ 26.

To determine whether an action requires an EIS as mandated by NEPA, an agency may prepare an Environmental Assessment ("EA"). 40 C.F.R. § 1501.49b). *Id.*, ¶ 28. If the agency decides that an EIS is not needed, it must prepare a Finding of No Significant Impact ("FONSI"). 40 C.F.R. § 1508.13. *Id.* If an action "may" have a significant impact on the environment, NEPA requires the agency to prepare an EIS. 40 C.F.R. §1508.18; 42 U.S.C. § 4332(C). Where the impacts of a project are not significant, or the agency is uncertain about their significance, it can prepare an EA. 40 C.F.R. §§1501.3,1508.9. *Id.*, ¶ 30.

The Osage Agency of the BIA has a long history of non-compliance with NEPA. *Id.*, ¶ 33. On May 4, 1978, Federal Judge H. Dale Cook entered a Judgment and Order in the consolidated cases of *William H. Bell. v. Civil D. Andrus*, 77-C-159-C and *Bank of Oklahoma v. Republic Gas and Oil Company*, 77-C-115-C, in the United States District Court for the Northern District of Oklahoma. *Id.*, ¶¶33-34. The order required, *inter alia*, that the Superintendent of the Osage Agency prepare an EA pursuant to NEPA on "the effect on the environment of oil and gas operations under oil mining leases, gas mining leases, oil and gas mining leases, drilling permits, authorizations to use water and other such documents approved or used by the Secretary relating to oil and gas operations on the lands in Osage County." *Id.*, ¶ 34.

On May 30, 1979, the Area Director for the BIA approved the Environmental Assessment for the Oil and Gas Leasing Program of the Osage Indian Tribe, Osage County, Oklahoma ("1979 EA"). *Id.*, ¶ 35. After approval of the 1979 EA, the Superintendent ostensibly relied on the 1979 EA to approve site-specific leases, APDs and workover permits. *Id.*, ¶ 36. However, there is not a single passage within the 1979 EA or its accompanying FONSI that defines the scope of the proposal to include site-specific leases and permits. *Id.* The Osage Agency's failure to conduct site-specific environmental analysis prior to approving these leases and permits violated NEPA. *Id.*

In May 2013, the Office of Inspector General ("OIG") for the DOI began an investigation of the oil and gas leasing program in Osage County, including a review of NEPA compliance by the Osage Agency. *Id.*, ¶ 42. During a visit by OIG auditors to the Osage Agency in late summer 2013, the auditors discovered that the Osage Agency was not conducting any site-specific environmental analysis prior to approving APDs, but were relying on improper categorical exclusions and were tiering off the 1979 EA, which the BIA knew to be no longer valid. *Id.*, ¶ 48.

Since the enactment of NEPA through the date of filing of the Complaint, the Osage Agency Superintendent approved oil and gas leases, APDs and assignments directly affecting Persimmon's property without conducting any environmental analysis, in violation of NEPA and 25 C.F.R. §226.2(c). *Id.*, ¶ 55. Pursuant to these invalid approvals, oil and gas operators have conducted activities upon Persimmon's Property, which have resulted in actual harm to Persimmon. *Id.*, ¶ 56. Currently, Trey Resources, Inc., an Oklahoma corporation, is operating several wells on Persimmon's property. *Id.*, ¶ 57. The Superintendent's failure to comply with NEPA prior to approving leases and APDs created an increased risk of actual, threatened and imminent environmental harm to Persimmon's Property. *Id.*, ¶ 58. The Superintendent's failure to conduct environmental analysis prior to granting these approvals was arbitrary and capricious, and, therefore, said approvals were legally inoperative. *Id.*, ¶ 59.

To the extent that the Defendants raise the defense of statute of limitations as to any challenged approval, Persimmon is entitled to equitable tolling of the limitations period. *Id.*, ¶ 69. Persimmon has never been provided any notice by the BIA of any major federal actions which were approved or that the BIA had done so in the absence of any attempt to comply with NEPA prior to approving the permit. *Id.* Further, the Osage Agency knowingly concealed from the public, including Persimmon, that the Agency was granting approvals of leases, APDs and other major federal actions without conducting any site-specific environmental analysis prior to granting the approvals. *Id.*, ¶ 70. The Osage Agency's concealment was part of an overall scheme to lull the public, including Persimmon, into inaction and avoid legal action. *Id.*

Plaintiff seeks declaratory judgment that all approvals of site-specific leases, APDs and workover permits violated NEPA and/or 25 CFR §226.2(c) and are legally inoperative or otherwise invalid; entry of an order requiring the Defendants to eject or otherwise preventing

operators from entering onto the property until they have obtained a valid oil and gas lease; and an award of costs, litigation expenses and attorney fee pursuant to the Equal Access to Justice Act, 28 U.S.C. §2412 *et seq.* Doc. 18 at p.19.

**III. Analysis**

**A. Defendants' Rule 12(b)(1) Motion to Dismiss [Doc. 21]**

Under the Administrative Procedures Act ("APA"), "[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). Claims brought pursuant to the APA, including the claims in the instant case, are subject to the six-year statute of limitations period set forth in 28 U.S.C. § 2401(a). *See Impact Energy Res.*, *LLC v. Salazar*, 693 F.3d 1239, 1245-46 (10th Cir. 2012).

Defendants assert that the statute of limitations precludes the Court from exercising subject matter jurisdiction, and they urge dismissal under Fed. R. Civ. P. 12(b)(1). But based on a recent decision by the Tenth Circuit Court of Appeals in *Chance v. Zinke*, No. 7-5057 (August 6, 2018), the time bar imposed by §2401(a) is *not* a jurisdictional bar and, therefore, the Court has subject matter jurisdiction over the case. (Doc. 41-1).

In *Chance*, as in this case, a surface owner challenged the BIA's approval of a lease assignment and two drilling permits, as well as all other "unknown" leases, drilling permits, and workover permits, as having violated NEPA. The United States District Court for the Northern District of Oklahoma ruled that the § 2401(a) statute of limitations is a jurisdictional bar, and therefore, the court lacked subject matter jurisdiction to consider plaintiff's alternative argument that he was entitled to equitable tolling to extend the deadline. Case No. 4:16-CV-549-JHP-FHM,

Doc. 48. On appeal, however, the Tenth Circuit held that the § 2401(a) limitation is *not* jurisdictional, and therefore, did not deprive the district court of subject matter jurisdiction.

Accordingly, pursuant to the appellate court's opinion in *Chance*, the Court rejects Defendants' argument that the Court lacks subject matter jurisdiction in this case.

### B. Defendant's Rule 12(b)(6) Motion to Dismiss

Defendants argue Plaintiff's First Amended Complaint should be dismissed pursuant to Rule 12(b)(6) because (1) all claims it asserts are barred by the statute of limitations; (2) Plaintiff has failed to establish a waiver of sovereign immunity; (3) Plaintiff has failed to exhaust its administrative remedies; (4) Plaintiff has failed to identify any final agency action with respect to his claim regarding unknown leases and permits, and (5) Plaintiff's claims are moot.

#### 1. Standard of Review

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Fed. R. Civ. P. 12(b)(6), a motion to dismiss is properly granted when a complaint provides no more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotations omitted).

On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* Rather, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008), quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247, citing *Twombly*, 127 S.Ct. at 1965 (internal quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

**2. Analysis**

The Supreme Court has adopted a rebuttable presumption that federal statutes of limitation requiring that suits be filed in court by a certain time—including those applicable to suits against the government—are subject to equitable tolling. *See*, *e.g.*, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990). The doctrine of equitable tolling "pauses the running of . . . a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Montoya Alvarez*, 134 S. Ct. 1224, 1231-32 (2014).

In *Chance,* the Tenth Circuit held that although the trial court erred in concluding that it lacked subject matter jurisdiction, the land owner's claim was properly dismissed pursuant to Rule 12(b)(6) because the allegations of the Complaint—taken as true—failed to state a cognizable claim for equitable tolling of the six-year statute of limitations found in 28 U.S.C. § 2401(a). However, the Tenth Circuit rejected plaintiff's request for equitable tolling of the limitations period, stating:

> Equitable tolling is granted sparingly. *Impact Energy Res., LLC v. Salazar*, 693 F.3d 1239, 1246 (10th Cir. 2012). And whether to grant equitable tolling

9

> is a discretionary matter for the district court. *Id.* According to "long-settled equitable tolling principles[,] '[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) *that he has been pursuing his rights diligently,* and (2) that some extraordinary circumstances stood in his way.'" *Credit Suisse Sec. (USA) LLC v. Simmons*, 566 U.S. 221, 227 (2012) (quoting *Pace v. Diguglielmo,* 544 U.S. 408, 418 (2005)).

(Doc. 41-1 at 19).

In *Chance,* as in this case, the Amended Complaint alleged that plaintiff was entitled to equitable tolling of the limitations period because (1) he had never been provided any notice of any major federal actions which were approved or that the BIA had done so in the absence of any attempt to comply with NEPA prior to approving the permit; (2) the Osage Agency knowingly concealed from the Public, including Chance, that the Agency was granting approvals of leases, APDs and other major federal actions without conducting any site-specific environmental analysis prior to granting the approvals; and (3) the Osage Agency's concealment was part of an overall scheme to lull the public into inaction and avoid legal action. [Doc. 39-1]. However, the Tenth Circuit determined that the complaint failed to allege facts establishing that the plaintiff had diligently pursued his rights or that any extraordinary circumstances stood in his way. *Id*. Accordingly, it denied plaintiff's request for equitable tolling.

Here, as in *Chance*, the Complaint fails to allege facts establishing either that the alleged violations occurred after January 17, 2011, or that, with respect to violations occurring before that date, Plaintiff had diligently pursued its rights or that any extraordinary circumstances stood in its way. As a result, the Complaint must be dismissed pursuant to Rule 12(b)(6).

### C. Plaintiff's Second Motion to Amend Complaint

Plaintiff seeks leave to file a Second Amended Complaint. (Doc. 35). The proposed amended complaint adds allegations concerning Plaintiff's efforts to obtain from the Osage

Agency copies of all leases, permits, workovers and associated NEPA documentation affecting Plaintiff's property since January 1, 2008. (Doc. 35-1 at 17, ¶¶ 55-57).

Under Fed. R. Civ. P. 15(a)(2), after 21 days a plaintiff may amend its complaint "only with the opposing party's written consent or the court's leave." Although Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires," courts generally refuse leave to amend based on "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed or *futility of amendment*." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (citation omitted) (emphasis added).

According to the proposed amended complaint, Plaintiff requested the records on November 29, 2017—well after the filing of its original complaint. *Id.*, ¶ 55. The proposed amended complaint describes leases and applications for drilling permits approved by the Osage Agency between December 6, 2006, and May 9, 2011. *Id.*, ¶ 57. Only the May 9, 2011, approval of a drilling permit for the Red Fork (USA) located in the SW/4 Sec. 17 TW 20 N.R 12 E ("Redfork") occurred after the January 17, 2011, statute of limitations date. As a result, any claims associated with the other leases and applications are barred by the statute of limitations. *Chance*, *supra.* Therefore, amendment is futile with respect to all leases, and applications for permits except the May 9, 2011 drilling permit.

With respect to the May 9, 2011 approval of the Redfork drilling permit, a BIA official making a decision "shall give all interested parties known to the decisionmaker written notice of the decision by personal delivery or mail." 25 C.F.R. §2.7(a). Written notice must include a statement that the decision may be appealed and detail the appeal procedures. *Id.*,§2.7(c). "Failure to give such notice shall not affect the validity of the decision or action but the time to file a notice of appeal regarding such a decision shall not begin to run until notice has been given." *Id.*, §2.7

(b).  Thus, if the BIA fails to properly notify an interested party, the time to appeal the decision is extended, but plaintiff's obligation to pursue an administrative appeal before filing suit in federal court is unchanged.  *See Begay v. Pub. Serv. Co. of N.M.*, 710 F. Supp.2d 1161, 1205 (D.N.M. 2010) ("Failure of the BIA to provide a notice does not necessarily cancel the administrative remedy process.  Instead, failure of the agency to give notice of the initial agency action simply extends the time in which the plaintiff can appeal the action.") (citing *Cheyenne-Arapaho Tribes Okla. v. United States*, 966 F.2d 583, 588 (10th Cir. 1992)); *Nulankeyutmonen Nkihtaqmikon v. Impson*, 573 F. Supp.2d 31, 321-22 (D. M. 2008) ("Although § 2.7 can extend the time limits for filing a notice of appeal, it does not eliminate the obligation to exhaust administrative remedies by proceeding with an appeal once notice is given.").  Therefore, even if plaintiff did not receive notice from the BIA regarding the Superintendent's approvals of the drilling permit, plaintiff is still obligated to exhaust its administrative remedies.

As previously noted, Plaintiff has failed to exhaust its administrative remedies with respect to the May 9, 2011 approval of the Redfork drilling permit—a prerequisite to filing suit against Defendants.  Therefore, it would be futile to grant the motion to amend with respect to this claim, because the claim would be subject to dismissal.

Plaintiff's Motion to File a Second Amended Complaint (Doc. 35) is denied.

Plaintiff also moved for leave to conduct discovery from the Defendants regarding matters relevant to the issue of equitable tolling.  (Doc. 26 at 1).  The Court, having dismissed Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and denied Plaintiff's Motion to Amend, denies the Motion for Leave to Conduct Discovery (Doc. 26) as moot.

## IV. Conclusion

For the reasons set forth above, the Defendants' Motion to Dismiss for Lack of Jurisdiction (Doc. 21) is denied. The Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 22) is granted. Plaintiff's Second Motion to Amend Complaint (Doc. 35) and Motion for Leave to Conduct Discovery from Federal Respondents (Doc. 26) are denied.

ENTERED this 18th day of September, 2018.

**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**